IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Nancy B. Stroman, Individually and as | ) | Civil Action No.: 5:03-2554-RBH |
| Personal Representative of the Estate | ) | |
| of John Donald Stroman, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Town of Santee; Police Commissioner | ) | |
| Cleveland Gilmore, in his individual | ) | |
| and official capacity; Police Chief Robert | ) | |
| Williams, in his individual and official | ) | |
| capacity; Police Officer Brian K. Brown; | ) | **O R D E R** |
| Orangeburg County; Orangeburg County | ) | |
| Fire District, a/k/a Orangeburg County Fire | ) | |
| Service; Cow Castle Volunteer Fire | ) | |
| Department; Santee Fire Service District; | ) | |
| the South Carolina Department of | ) | |
| Transportation; and the South Carolina | ) | |
| Department of Public Safety, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the court is Defendants' Orangeburg County, Orangeburg County Fire District,

a/k/a Orangeburg County Fire Service, and Cow Castle Volunteer Fire Department (collectively,

"Orangeburg defendants"), motion for summary judgment on their declaratory judgment counterclaim

as to the number of occurrences and the applicable statutory damages cap. Subsequent to the filing of

the instant motion, Defendants Town of Santee, Police Commissioner Cleveland Gilmore, Police Chief

Robert Williams, Police Officer Brian K. Brown, Santee Fire Service District, the South Carolina

Department of Transportation, and the South Carolina Department of Public Safety joined in this

motion. The court held a hearing on this motion on April 19, 2005. At the conclusion of the hearing

1

the court took the matter under advisement and rules as follows:

## Background Facts and Procedural History

This case arises from a tragic collision on October 31, 2002, between the vehicle of Nancy and John D. Stroman and a vehicle driven by Defendant Brian Brown. This case was filed in the Orangeburg County Court of Common Pleas on June 27, 2003. Nancy Stroman sued the non-individual defendants, all state agencies, political subdivisions, or other governmental entities, under the South Carolina Tort Claims Act ("SCTCA"), in negligence, for personal injuries to herself, and for the personal injuries (survival) and wrongful death of her husband, John Donald Stroman. Additionally, Mrs. Stroman pleads a cause of action pursuant to 42 U.S.C. § 1983, against Defendants Town of Santee, Police Commissioner Cleveland Gilmore, Police Chief Robert Williams, and Police Officer Brian Brown.

The action was removed to this court on August 5, 2003. At the time of the removal, the South Carolina Department of Public Safety ("SCDPS") was not a defendant. The plaintiff filed a motion to remand on September 3, 2003. The Honorable Henry F. Floyd denied plaintiff's motion to remand. SCDPS was then added as a defendant and subsequently filed a motion to dismiss which was denied by the undersigned on October 27, 2004. The Orangeburg defendants move for summary judgment on their declaratory judgment counterclaim, seeking a declaration that this action involves one occurrence and that the applicable actual damages cap under the SCTCA, is $300,000 per person per occurrence with a $600,000 aggregate per occurrence. The plaintiff, in her Reply to the declaratory judgment counterclaim of the Orangeburg defendants, alleges that the acts and/or omissions of the defendants in this matter constitute more than one occurrence. The plaintiff also alleges involvement of a physician as Medical Control Officer and/or Medical Director of the Orangeburg County Fire Service, and has

asserted that a $1.2 million damages cap is applicable to that aspect of the case.  The motion and this order apply only to the negligence actions under the SCTCA, not the §1983 action.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the Court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence.  The nonmoving party, here the plaintiff, must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).  Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

3

**Discussion**

**A.  Number of Occurrences**

The concept of  "occurrence" is critical in this action because the SCTCA includes a cap on actual damages recoverable against governmental entities in tort actions.  Those amounts, set forth in S.C. Code Ann. § 15-78-120, are applicable to the plaintiff's claims in which the court must apply the substantive law of the State of South Carolina.  The Orangeburg defendants have urged the court to make a determination that the events alleged by the plaintiff constitute one occurrence, that being the alleged gross negligence of the driving of Defendant Santee Police Officer Brown and his ensuing collision with the Stromans.  In the event that this court determines there was one occurrence, the damages recoverable for the injuries to the two occupants of the Stroman vehicle, as a result of the conduct of a government employee who is neither a physician nor dentist, would be limited to a total aggregate amount of $600,000.  S.C. Code Ann. § 15-78-120(a)(1) and (2).  The plaintiff alleges that the facts of this case constitute more than one occurrence.  While this precise question has not been decided by the South Carolina Appellate courts, this court finds it unnecessary to certify the question to the South Carolina State courts because the statute is reasonably clear and the court is able to anticipate what the State court's decision would be in this case.  The court also finds that there is ample guidance for its decision within the existing law of South Carolina.  See Roe v. Doe, 28 F.3d 404, 407 (4th Cir. 1994)("[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court"); see also Smith v. FCX, Inc., 744 F.2d 1378, 1379 (4th Cir. 1984)(determining certification was unnecessary since there was ample state precedent to guide the federal court as to the answer the state court would provide), *cert. denied*, 471 U.S. 1103 (1985).

In deciding this motion for summary judgment the court must consider whether there is any

4

genuine issue of material fact which would preclude judgment for the movant, and thus, the court is required, for purposes of this motion, to view the facts, in the light most favorable to the plaintiff as the non-moving party.  Since little discovery has been conducted in this action to date, the court will, for purposes of this motion, assume that the facts are as alleged in the amended complaint filed by the plaintiff on August 26, 2004.  The plaintiff alleges that on October 31, 2002, Santee Police Officer Brian Keith Brown was involved in a violent automobile collision with a vehicle occupied by Mr. and Mrs. Stroman.  The collision caused severe life-threatening injuries to the Stromans and Mr. Stroman ultimately died from those injuries.  The plaintiff alleges significant acts of negligence, gross negligence and recklessness on the part of Officer Brown.

All parties agree that the automobile collision itself constitutes one occurrence under the SCTCA; therefore, no further analysis of those events is necessary.  However, the parties differ as to whether the events that transpired subsequent to the collision constitute a separate and distinct second occurrence under the SCTCA or are part of the collision occurrence.

The plaintiff alleges gross negligence on the part of the South Carolina Department of Transportation in the design of the intersection.[1]  Plaintiff also alleges gross negligence on the part of the South Carolina Department of Public Safety, the Orangeburg defendants, and the Santee Fire Service District, in their respective activities of medical care, treatment, extrication, transportation, investigation of the collision, and nonmedical management of the scene.  The plaintiff argues that the time it took emergency workers to remove the plaintiff and her husband from their vehicle was unreasonably long and constituted gross negligence.

---

[1]Plaintiff represented at the hearing, however, that the highway design and the collision are conceded to be one occurrence together.

5

In support of her contention, Plaintiff has provided affidavits from experts in the field of EMS as well as evidentiary support of the following: (1) the Hurst Extrication Tool (Jaws of Life), when used by the emergency workers at the scene, was out of gas; (2) the ambulance used to transport the plaintiff broke down, which required the plaintiff to be transported in the back of a pick up truck; and (3) the medical evacuation helicopter was called by EMS, cancelled by EMS and then recalled by EMS, causing further delay.

Additionally, the plaintiff has provided affidavits from witnesses at the scene of this collision in support of her allegation that the emergency workers and/or SCDPS chose not to use the most expeditious manner of extrication of the Stromans from their vehicle because they wanted to "preserve the crime scene."

Plaintiff alleges that these acts and/or omissions caused the extrication of her deceased husband to take more than one hour and thirty nine minutes and her extrication to take two hours and thirteen minutes. Plaintiff alleges that the extrication was unnecessarily prolonged due to the acts and omissions of the emergency workers and that this delay caused injury to her and her deceased husband. The plaintiff and the decedent were both conscious during the extended extrication, suffering from serious injuries, and in substantial pain.

At the hearing on this matter, the plaintiff argued that the negligent acts of the Santee Police Department defendants and/or Defendant South Carolina Department of Transportation led to the automobile collision and, hence, the physical injuries sustained by the plaintiff and the decedent. Plaintiff also argued that there were, on that evening, separate and distinct negligent acts committed by the EMS/Fire Defendants and/or SCDPS, which led to an unnecessarily extended extrication process and that this extrication process resulted in distinct and separately identifiable injuries to the plaintiff

6

and the decedent. Those injuries being unnecessarily extended periods of conscious pain and suffering. Plaintiff argues that this is a second occurrence as defined by the SCTCA.

Basically, the plaintiff's argument regarding a second "occurrence" can be broken down into three (3) sub-parts. To summarize, the alleged second occurrence involves allegations that deal with: (a) the negligent maintaining or use of faulty equipment; (b) negligent medical care; and (c) negligent delay in the extrication of the Stromans from their vehicle due to an effort by law enforcement and/or others to preserve the crime scene investigation (*i.e.*, placing more importance on the investigation instead of the health and safety of the Stromans and their need for prompt extrication from their vehicle).

This case is governed by the SCTCA, S.C. Code Ann. §15-78-10, *et seq.*, pursuant to which the sovereign immunity of the State of South Carolina, its agencies, political subdivisions, and other governmental entities, is abrogated to a limited extent. No state law tort claim may be made against the State, a governmental entity, a political subdivision or their employees, except via, and to the extent of, the Act. The Act provides, in §15-78-120(a), the following limitations on actual damages:

> (a) For any action or claim for damages brought under the provisions of this chapter, the liability shall not exceed the following limits:
>
> (1) Except as provided in Section 15-78-120(a)(3), no person shall recover in any action or claim brought hereunder a sum exceeding three hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.
>
> (2) Except as provided in Section 15-78-120(a)(4), the total sum recovered hereunder arising out of a single occurrence shall not exceed six hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.
>
> (3) No person may recover in any action or claim brought hereunder against any governmental entity and caused by the tort of any licensed physician or dentist,

7

employed by a governmental entity and acting within the scope of his profession, a sum exceeding one million two hundred thousand dollars because of a loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved.

(4) The total sum recovered hereunder arising out of a single occurrence of liability of any governmental entity for any tort caused by any licensed physician or dentist, employed by a governmental entity and acting within the scope of his profession, may not exceed one million two hundred thousand dollars regardless of the number of agencies or political subdivisions or claims or actions involved.

S.C. Code Ann. § 15-78-120(a)(1) - (4).

An occurrence is defined by the Act as follows: "'[o]ccurrence' means an unfolding sequence of events which proximately flow from a single act of negligence." § 15-78-30(g). Read together with § 15-78-120(a), the two sections provide liability limits for a loss arising out of an unfolding sequence of events which proximately flow from a single act of negligence, regardless of the number of agencies or political subdivisions or claims or actions involved.

S.C. Code Ann. § 15-78-20, sets forth the legislative intent behind the SCTCA, to allow the government to be held responsible for its torts, but to limit that liability in light of the "financial limitations" within which each governmental entity must exercise its powers. To that end, the South Carolina Legislature provided a statutory scheme under which the government is neither totally immune from liability, nor subjected to unqualified liability. §15-78-20(a). The Act thus provides that governmental entities and their employees shall remain immune from suit except as waived by the Act. § 15-78-20(b). The Act provides for its liberal construction in favor of limited liability. §15-78-20(f).

S.C. Code Ann. § 15-78-40, provides that, subject to the limitations set forth in the Act, the governmental entities protected by the Act are liable for their torts in the same manner as private individuals. The Legislature's definition of "occurrence" is consistent with the longstanding principle

8

of South Carolina common law that a private tortfeasor is responsible for all damages that proximately flow from the tort, and the negligence of another will not operate to interrupt that flow of damages unless it is sufficiently unpredictable and unforeseeable to break the causal chain. The South Carolina Supreme Court's decision in Graham v. Whitaker, 321 S.E.2d 40 (1984), is illustrative and on point in this action. In Graham, the plaintiff was administered dilating eye drops in her ophthalmologist's office, whereafter she fell and injured her hip. Nonetheless, she was able to walk out of the office. She later underwent hip surgery, which was negligently performed as a pin was inserted which eroded her bone, thereby necessitating a second hip surgery and 101 days in the hospital. The ophthalmologist asserted it was not his fault that the initial hip surgery was negligently performed, and that the damages caused by that negligence had been erroneously submitted to the jury. The South Carolina Supreme Court affirmed the trial court decision:

> While it appears that Mrs. Graham was able to walk out of the doctor's office and that most of her injuries were sustained as the result of her first operation, this intervening act will not break the chain of causation so as to excuse the negligence of Dr. Whitaker or his employees. *Liability exists for the natural and probable consequences of negligent acts and omissions, proximately flowing therefrom. The intervening negligence of a third person will not excuse the original wrongdoer if such intervention ought to have been foreseen in the exercise of due care.*

Id. at 44 (emphasis added). The Court went on to note, "[i]t has been held in South Carolina that the negligence of an attending physician is reasonably foreseeable. The general rule is that if an injured person uses ordinary care in selecting a physician for treatment of his injury, the law regards the aggravation of the injury resulting from the negligent act of the physician as part of the immediate and direct damages which naturally flow from the original injury." Id.

In this case, couched in terms of the SCTCA, Plaintiff argues that the above referenced unfolding sequence of events, the two hour extended extrication, proximately flowed from the

9

negligence of the EMS/Fire Defendants and/or the negligence of SCDPS, not from the negligence of the Santee Police Defendants and/or the South Carolina Department of Transportation.  Plaintiff argues that but for the negligence of the EMS/Fire Defendants and/or SCDPS there would have been no extended extrication and, hence, no extended conscious pain and suffering.  The plaintiff further argues that for this court to rule this is only one occurrence, it would have to find that it is foreseeable that emergency workers would be negligent in multiple ways, such as arriving at a collision scene with emergency equipment that is out of gas, calling, canceling and then re-calling a medical evacuation helicopter, and allowing critically injured trauma patients to remain in a wrecked vehicle until evidence of a crime has been preserved.

In response, the defendants argue that the damages which plaintiff alleges constitute the second occurrence would not have been incurred at all, absent the collision with the police officer.  The defendants state that the collision is the reason the Stromans were in need of the intervention by the law enforcement and rescue personnel on the scene.  They argue that the couple's injuries, and Mr. Stroman's death, were due to and proximately flowed from the collision.  Further, the defendants state that it was entirely foreseeable and predictable that Defendant Brown's negligence might cause someone to require rescue.  To that end, they argue that if medical malpractice in hip surgery is foreseeable and predictable, then it would appear that negligence, even gross negligence, in a rescue operation would be predictable and foreseeable.  Therefore, the defendants state that Brown's negligence initiated an "unfolding sequence of events" which encompasses the collision, the injuries, the pain and suffering sustained by Mrs. Stroman from impact to recovery, the pain and suffering sustained by Mr. Stroman from impact to death, and the death of Mr. Stroman and all losses stemming from the death.

10

After having considered the aforementioned statutes as well as the common law of South Carolina, it is the finding of this court that the allegations of negligent medical care, treatment, extrication, and transportation that occurred after the collision are all traceable to a common root, the alleged negligence of Defendant Brown and the ensuing collision of vehicles. These allegations constitute an "unfolding sequence of events which proximately flow" from the collision. The court concurs with the defendants' proposition that if medical malpractice in hip surgery is foreseeable, then negligence in a rescue operation would be foreseeable. Therefore, the court finds that the above mentioned conduct is not a separate occurrence from the collision itself.

However, the court finds that the allegations regarding the investigation of the collision and the nonmedical management of the scene (*i.e.*, the allegations that emergency workers and/or SCDPS chose to delay the extrication and removal of the Stromans because they wanted to "preserve the crime scene" for investigatory purposes) are not acts of negligence which proximately flow from the collision. The court finds that the alleged act of choosing preservation of a crime scene over human life and safety is an intervening act which is not a foreseeable consequence of the collision. This act of negligence was so remote it was unforeseeable. In reaching this determination, this court finds guidance in several South Carolina Appellate court cases which stand for the proposition that certain acts of third parties are not attributable to the original breach of duty, if the third party's acts are not foreseeable.

The South Carolina Supreme Court stated in <u>Bishop v. S.C. Dept of Mental Health,</u> 502 S.E.2d 78, 89 (S.C. 1998), that "[f]oreseeability is determined by looking to the natural and probable consequences of the complained of act." In that case, the Court held that the Department's breach of duty to warn regarding threats to harm a child was not the proximate cause of harm, due to the intervening negligence of the child's grandmother. <u>Id</u>. at 90-91. The Court stated that "the Department

11

could not reasonably foresee grandmother would allow mother to visit with victim unsupervised since only three days earlier grandmother had mother involuntarily committed because mother was threatening to harm victim." Id. The Court found that:

> The test by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent conduct of another is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in light of the attendant circumstances.

Id. at 89.

Similarly, the South Carolina Supreme Court found in Hensley v. Heavrin, that the negligent diagnosis that a woman had syphilis was not the legal cause of husband's striking her as a result of his suspicions of infidelity because "such an action is an unforeseeable intervening cause of injuries." 282 S.E.2d 854, 855 (S.C. 1981).

 The South Carolina Supreme Court held in Stone v. Bethea, that the negligent leaving of keys in a car was not the proximate cause of injury resulting from negligent driving by thief who stole car, because the theft and subsequent negligence by thief were not foreseeable.  161 S.E.2d 171 (S.C. 1968).

Furthermore, even if the alleged conduct of the emergency workers and/or SCDPS in choosing preservation of a crime scene over human life and safety was foreseeable, the court finds that such alleged conduct was extraordinarily outrageous or appalling and this event does not proximately flow from the collision.  See Hubbard & Felix, The South Carolina Law of Torts, 3d Edition, at 156 ("[c]ourts occasionally make an exception to the general rule and hold that if an intervening person's conduct is extraordinarily outrageous or appalling, the initial actor's breach of duty is not the proximate cause even if the result was foreseeable.").

Therefore, for the reasons stated above, this court finds that the allegations of negligence against

the emergency workers and/or SCDPS regarding the investigation of the collision and the nonmedical management of the scene (*i.e.*, allegations that defendants tried to "preserve the crime scene" instead of extricating the Stromans) constitute a second occurrence under the SCTCA.

**B.   Applicable Statutory Damages Caps**

In the case of a tort committed by a licensed physician or dentist, the SCTCA provides for a higher damage cap of One Million Two Hundred Thousand ($1,200,000.00) Dollars per occurrence. South Carolina Code Ann. § 15-78-120(a)(3).  The plaintiff argues that, as to the collision occurrence (the first occurrence), the applicable damage caps of South Carolina Code Ann. § 15-78-130(a)(1) and (2) apply, but that, as to, what the plaintiff refers to as the post collision occurrence, the applicable damage caps of South Carolina Code Ann. § 15-78-120(a) (3) and (4) apply.  Specifically, Plaintiff states that in South Carolina, regulations require that each emergency medical system retain a medical control physician to maintain quality control of care provided.  See South Carolina Department of Health and Environmental Control, Reg. 61-7, § 302.  These regulations also grant authority to the medical control physician to oversee the quality of patient care for all EMS personnel and retain other responsibilities as may be negotiated by agreement with the service.  Id.

The plaintiff contends that she is entitled to the higher damages cap of § 15-78-120(a)(3) and (4) based on the negligent acts and/or omissions of the EMS/Fire Defendants' medical control physician, who is charged with numerous supervisory and control duties of the EMS system.  The plaintiff further contends that nothing in the statutory language of § 15-78-120(a)(3) and (4) requires the licensed physician to physically commit the tort through personally treating a patient.  The plaintiff argues that all is required is a negligent act of a licensed physician acting within the scope of his profession, including the supervision and training of emergency workers under his control.

13

However, because the court has found that the alleged negligent acts of the EMS/Fire Defendants in their providing of medical care, treatment, extrication and transportation does not constitute a second occurrence, it only follows that the higher damage caps are not triggered. The court has found that the above mentioned conduct proximately flows from the collision. The plaintiff has stipulated that the collision does not trigger the higher damage caps under § 15-78-120(a)(3) and (4), rather it falls under the damage caps of § 15-78-120(a)(1) and (2). Further, the conduct involving the nonmedical management of the scene, which the court found to constitute a second occurrence, would also fall under the damage caps of § 15-78-120(a)(1) and (2). For those reasons, the court finds it unnecessary to address whether the negligent acts of EMT's would trigger the higher damage caps under § 15-78-120(a)(3) and (4).

### Conclusion

For the reasons stated above, the Orangeburg defendants' motion for summary judgment on their declaratory judgment counterclaim is hereby **GRANTED** in part and **DENIED** in part. This order shall not affect the damages, if any, recoverable by the plaintiff in her §1983 cause of action.

**AND IT IS SO ORDERED**.

             s/ R. Bryan Harwell
             R. Bryan Harwell
             United States District Judge

June 28, 2005
Florence, South Carolina

14